UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARMEL ROBY, JENNIFER JUENKE, JAMIE SPRITZER, and TIMOTHY STOKES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSIDER, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Darmel Roby, Jennifer Juenke, Jamie Spritzer, and Timothy Stokes (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, complain upon knowledge as to their own acts and upon information and belief as to all other matters against Insider, Inc. as follows:

## SUMMARY OF ALLEGATIONS

1. This is a consumer privacy class action against Insider, Inc. ("Insider") for violating the Video Privacy Protection Act ("VPPA" or "the Act") by disclosing its digital users' identities and video-viewing preferences to Meta Platforms, Inc. ("Meta") without proper consent. Meta owns the popular social media platforms Facebook and Instagram.

2. The VPPA prohibits "video tape service providers," such as Insider, from knowingly disclosing consumers' personally identifiable information ("PII"), including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without the person having expressly given consent in a standalone consent form.

1

3. Insider, through its website, www.businessinsider.com ("Business Insider"), collects and shares users' personal information with Meta using a "Meta Pixel." A Meta Pixel is a snippet of programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

4. The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

5. In this case, by its incorporation of Meta Pixel, Insider shared with Meta PII, including at least the user's Facebook Profile ID, and the title of the video that the user watched. A user's Facebook Profile ID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

6. Insider discloses the user's Facebook Profile ID and viewing content to Meta together in a single, unencrypted transmission, in violation of the VPPA. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any other person—can use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In other words, Insider's use of the Meta Pixel allows Meta to know what video content its users viewed on Insider.

7. Insider users do not consent to such sharing through a standalone consent form, as required by the VPPA. As a result, Insider violates the VPPA by disclosing this information to Meta.

8. On behalf of a Class of similarly situated Insider users, Plaintiffs seek relief through this action. Based on the facts set forth in this Complaint, Insider violated the Video

Privacy Protection Act ("VPPA") and is liable for unjust enrichment.

## PARTIES

**A.     Plaintiffs**

9.      Plaintiff **Darmel Roby** is a citizen and resident of Flint, Michigan.

10.     Plaintiff Roby is an Insider subscriber and provided Insider with his PII, including his name and email address when subscribing to its services.

11.     Plaintiff Roby has maintained a Facebook account for about 10 years and spends approximately 8 to 10 hours per day on Facebook. Plaintiff Roby's Facebook profile includes personal information about him, including his name and other personal details.

12.     Plaintiff Roby has maintained an Instagram account for about 12 years and typically spends 1 to 2 hours per day on Instagram.

13.     Plaintiff Roby visited the Business Insider website using his web browser on numerous occasions to view video content.

14.     Plaintiff Roby requests and watches videos on Business Insider using the same browser that he uses to login to Facebook, including while he is logged in to Facebook. Plaintiff Roby uses the same device to request and watch videos on the Business Insider website that he uses for Facebook and Instagram.

15.     Insider sent to Meta Plaintiff Roby's PII, including his Facebook Profile ID, as well as the title of each video he viewed without obtaining consent through a standalone consent form.

16.     Plaintiff Roby has seen targeted advertisements on Facebook after watching related videos on the Business Insider website.

17. Plaintiff Roby's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without consent.

18. Plaintiff **Jennifer Juenke** is a citizen and resident of Summerfield, Florida.

19. Plaintiff Juenke is an Insider subscriber and provided Insider with her PII, including her name and email address when subscribing to its services.

20. Plaintiff Juenke has maintained a Facebook account for about 12 years and spends approximately 2 to 4 hours per day on Facebook. Plaintiff Juenke's Facebook profile includes personal information about her, including her name and other personal details.

21. Plaintiff Juenke has maintained an Instagram account for about 6 years and typically spends less than 1 hour per day on Instagram.

22. Plaintiff Juenke visited the Business Insider website using her web browser on numerous occasions to view video content.

23. Plaintiff Juenke requests and watches videos on Business Insider using the same browser that she uses to login to Facebook, including while she is logged into Facebook. Plaintiff Juenke uses the same device to request and watch videos on the Business Insider website that she uses for Facebook and Instagram.

24. Insider sent to Meta Plaintiff Juenke's PII, including her Facebook Profile ID, as well as the title of each video she viewed without obtaining consent through a standalone consent form.

25. Plaintiff Juenke has seen targeted advertisements on Facebook after watching related videos on Business Insider's website.

26. Plaintiff Juenke's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without consent.

27. Plaintiff **Jamie Spritzer** is a citizen and resident of Roslyn Heights, New York.

28. Plaintiff Spritzer is an Insider subscriber and provided Insider with her PII, including her name and email address when subscribing to its services.

29. Plaintiff Spritzer has maintained a Facebook account for about 10 years and spends approximately 2 hours per day on Facebook. Plaintiff Spritzer's Facebook profile includes personal information about her, including her name and other personal details.

30. Plaintiff Spritzer visited the Business Insider website using her web browser on numerous occasions to view video content.

31. Plaintiff Spritzer requests and watches videos on Business Insider using the same browser that she uses to login to Facebook, including while she is logged in to Facebook. Plaintiff Spritzer uses the same device to request and watch videos on the Business Insider website that she uses for Facebook and Instagram.

32. Insider sent to Meta Plaintiff Spritzer's PII, including her Facebook Profile ID, as well as the title of each video she viewed without obtaining consent through a standalone consent form.

33. Plaintiff Spritzer has seen targeted advertisements on Facebook after watching related videos on Business Insider's website.

34. Plaintiff Spritzer's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without consent.

35. Plaintiff **Timothy Stokes** is a citizen and resident of Ovett, Mississippi.

36. Plaintiff Stokes is an Insider subscriber and provided Insider with his PII, including his name and email address when subscribing to its services.

37. Plaintiff Stokes has maintained a Facebook account for about 14 years and spends approximately 1 hour per day on Facebook. Plaintiff Stokes's Facebook profile includes personal information about him, including his name and other personal details.

38. Plaintiff Stokes has maintained an Instagram account for about 12 years and typically spends less than 1 hour per day on Instagram.

39. Plaintiff Stokes visited the Business Insider website using his web browser on numerous occasions to view video content.

40. Plaintiff Stokes requests and watches videos on Business Insider using the same browser that he uses to login to Facebook, including while he is logged into Facebook. Plaintiff Stokes uses the same device to request and watch videos on the Business Insider website that he uses for Facebook and Instagram.

41. Insider sent to Meta Plaintiff Stokes's PII, including his Facebook Profile ID, as well as the title of each video he viewed without obtaining consent through a standalone consent form.

42. Plaintiff Stokes has seen targeted advertisements on Facebook after watching related videos on Business Insider's website.

43. Plaintiff Stoke's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without consent.

44. **B.   Defendant**

45. Defendant Insider is a Delaware corporation headquartered at 1 Liberty Plaza, 8th Floor New York, NY 10006.

## JURISDICTION AND VENUE

46. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710.

47. This Court also has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

48. This Court has general personal jurisdiction over Business Insider because it maintains its principal place of business in New York. Additionally, Business Insider is subject to specific personal jurisdiction in this State because it maintains sufficient minimum contacts with the State of New York and a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this state.

49. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

**A.    Insider Disclosed Plaintiffs' and Class Members' Private Viewing Information to Meta Without Their Consent.**

50. Insider owns and operates Business Insider, a website geared towards providing business-related content to users, including information on topics such as technology, finance, markets, strategy, retail, and advertising.

51. Business Insider provides prerecorded audiovisual content on its website, which Plaintiffs requested and viewed.

52. While Plaintiffs and Class members were viewing the video content they requested on the Business Insider website, Insider transmitted this information to Meta, the multinational technology conglomerate that owns social media networks www.Facebook.com ("Facebook") and www.Instagram.com ("Instagram").

53. Insider's transmission of viewing information to Meta included the specific names of video content viewed by users, as well as the users' PII, such as Facebook Profile IDs, i.e., a unique identifier to each Facebook profile that personally identifies the user.

54. Anyone who possesses a Facebook Profile ID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which contains additional personal information.

55. Facebook profiles may contain a Facebook user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts. Facebook profiles often reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members and written posts may disclose religious preferences, political affiliations, personal interests and more.

56. Insider transmitted the video title and PII, including at least the Facebook Profile ID, in a single, unencrypted transmission through a non-customer facing tracking tool called a "Meta Pixel."

57. Meta Pixel is a snippet of a programming code that, once installed on a webpage, sends to Meta data relating to the interactions a user takes on a particular website. Meta Pixel tracks users as they navigate through the website and logs which pages are visited, buttons are clicked, and, in this case, which videos a user requested and viewed on Business Insider.

58. Meta Pixel is an advertising and analytics tool that allows website owners to track

visitor actions on their websites and send the corresponding information to Meta. Websites use Meta Pixel to collect analytical data about how users use its website and, in turn, are able to target more specific ads to their users. Meta Pixel therefore allows companies to better target their advertisements, focusing on visitors who are more likely to make a purchase. Thus, Meta Pixel is installed within the code of a website, such as Business Insider, to increase the business's profits.

59. Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Meta Pixel.

60. Meta benefits from websites like Insider installing its Pixel. When Meta Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Meta, Meta Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. This data can also be used to develop and refine Meta's machine learning algorithms, including those used to serve targeted advertisements to Facebook users, and others. Meta Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

61. Using the Meta Pixel likewise benefits Insider by providing it with analytical data about its website and improving its ability to promote its content and services to its users. For instance, the data collected through Meta Pixel is provided to Insider in Meta's Events Manager, as well as tools and analytics to reach these individuals through Facebook ads. Insider can use this information to create "custom audiences" through Meta to target the specific Facebook user, as well as other Facebook users who match members' of the audience's criteria. Insider can also

sort through the data collected by Meta Pixel to find specific types of users, for instance, women over a certain age. Insider also profits from selling parts of Business Insider to display advertisers.

62. Through the use of Meta Pixel, Insider—in the same transmission—discloses to Meta the full name of each video a user requested and watched, together with the user's Facebook Profile ID, thus linking users' browsing activities and preferences to their Facebook profiles. In other words, this single transmission connects a user's video viewing choices with their Facebook Profile.

63. Insider violates and invades the privacy rights of users with its practice of sending their Facebook Profile IDs, together with viewing content, to Meta without adequate consent.

64. The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. Insider's website includes Terms of Use, a Privacy Policy, and a Cookie Policy, among other policies, none of which operate as a standalone consent form disclosing the information shared through the Meta Pixel and requesting user consent. Accordingly, no user provided Insider with the level of consent required by the VPPA for disclosure of their viewing content and identities to Meta.

**B.  Plaintiffs and Class Members Suffered Harm as a Result of Insider's Privacy Violations.**

65. Insider shared Plaintiffs' sensitive data with Meta, including their video viewing histories linked to their Facebook Profile IDs, which Plaintiffs reasonably expected would be kept private.

66. The personal information Insider obtained from Plaintiffs and Class members constitutes valuable data in the digital advertising-related market for consumer information.

Insider's wrongful acquisition and use of their personal, private information deprived Plaintiffs and Class members of control over that information and prevented them from realizing its full value for themselves.

67. Insider's conduct has resulted in economic harm to Plaintiffs and Class members whose PII diminished in value when Insider made this information available to Meta.

68. The harms described above are aggravated by Insider's continued retention and commercial use of Plaintiffs' and Class members' personal information, including their private video viewing histories.

## CLASS ALLEGATIONS

69. Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class:

> **Nationwide Class**: All persons residing in the United States who requested and viewed video content on Business Insider and were Facebook and/or Instagram users during the time Meta's Pixel was active on Business Insider, whose personally identifiable information and viewing content was disclosed to Meta through the Meta Pixel.

70. The "Class Period" is from January 1, 2013 to the present.

71. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

72. Excluded from the Class are (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Insider or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

73. **Numerosity**: The Class consists of at least hundreds of thousands of individuals,

11

making joinder impractical.

74. **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include, but are not limited to:

    a. Whether Insider's use of the Meta Pixel was without user consent or authorization;

    b. Whether Insider obtained and shared or caused to be obtained and shared Plaintiffs' and Class members' personal information through tracking using Meta Pixel, which Insider installed on its webpages;

    c. Whether other third parties obtained Plaintiffs' and Class members' personal information as a result of Insider's conduct described herein;

    d. Whether Insider's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

    e. Whether Insider was unjustly enriched as a result of sharing users' information with Meta;

    f. Whether Insider's acquisition and transmission of Plaintiffs' and Class members' personal information resulted in harm; and

    g. Whether Insider should be enjoined from engaging in such conduct in the future.

75. **Typicality**: Plaintiffs' claims are typical of the claims of Class members in that Plaintiffs, like all Class members, have been injured by Insider's misconduct—disclosing users' PII and viewing content to Meta without consent.

76. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

77. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Insider to

comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Insider's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

78. **Injunctive relief**: Insider has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

79. All applicable statute(s) of limitations have been tolled by Insider's knowing and active concealment and denial of the facts alleged herein.

80. As alleged herein, Meta Pixel is a snippet of code not apparent to consumers from the Business Insider website. Plaintiffs never knew of Insider's misconduct, as Insider never obtained Plaintiffs' consent to collect their personal viewing content and PII.

81. Plaintiffs and Class members could not have reasonably discovered Insider's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

82. Insider was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by Insider, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (VIDEO PRIVACY PROTECTION ACT)
### 18 U.S.C. § 2710, *et seq.*

83.     Plaintiffs incorporate and reallege the above factual allegations by reference.

84.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

85.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." Insider is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those deliveries affect interstate or foreign commerce.

86.     As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

87.     Insider knowingly caused personal viewing information, including Facebook Profile IDs, concerning Plaintiffs and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Meta as an individual who viewed Insider's content, including the specific video materials watched on Business Insider.

88.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser,

or subscriber of goods or services from a video tape service provider." Plaintiffs are subscribers to Insider's services which provide video content to users on its website. Thus, Plaintiffs are "consumers" under this definition.

89. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Insider failed to obtain informed, written consent under this definition.

90. Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Insider failed to provide an opportunity to opt out as required by the Act.

91. Insider was aware that the data disclosed to Meta through the Meta Pixel identified Plaintiffs and Class members. Insider also knew that Plaintiffs' and Class members' personal viewing content was disclosed to Meta because Insider programmed the Meta Pixel into its website code knowing that Meta would receive video titles and the subscriber's Facebook Profile ID when a user watched a video.

92. By disclosing Plaintiffs' and Class members' personal viewing content, Insider violated Plaintiffs' and Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

93. As a result of the above violations, Insider is liable to Plaintiffs and Class

members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "actual damages but not less than liquidated damages in an amount of $2,500" per violation. 18 U.S.C. § 2710(c)(2)(A). Under the Act, Insider is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by Insider in the future.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT

94. Plaintiffs incorporate and reallege the above factual allegations by reference.

95. Insider acted wrongfully by sharing users' Facebook Profile IDs and viewing content to Meta without users' consent.

96. Insider shared users' PII and viewing content with Meta without their consent for its own gain, including for advertising purposes. This conduct, along with Insider's failure to disclose this practice, caused Insider to profit from advertisement revenue it would otherwise not have received.

97. Insider unjustly retained those benefits at the expense of Plaintiffs without providing any commensurate compensation to Plaintiffs. Insider's retention of these ill-gotten gains is unjust and inequitable.

98. Accordingly, Plaintiffs, on behalf of themselves and the Class, seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment. There is no adequate remedy at law that would provide redress to Plaintiffs and the Class or ensure that Insider will not deploy the same data practices in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter an order:

A. Certifying the Class and appointing Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

B. Finding that Defendant's conduct was unlawful and entering judgment in favor of Plaintiffs and the Class;

C. Awarding injunctive, declaratory, or other equitable relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Awarding all actual, general, special, incidental, statutory, treble, punitive, liquidated, compensatory, consequential, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained to which Plaintiffs and Class members are entitled;

E. Awarding Plaintiffs and Class members pre- and post-judgment interest as provided by law;

F. Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by Defendant through its wrongful conduct;

G. Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

H. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: August 10, 2022                                   Respectfully submitted,

*/s/ Christian Levis*
Christian Levis
Amanda Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Adam E. Polk (*Pro Hac Vice* to be Filed)
Simon Grille (*Pro Hac Vice* to be Filed)
Jessica Cook (*Pro Hac Vice* to be Filed)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com

*Attorneys for Plaintiffs*